**ERNEST AND MARY HAYWARD WEIR FOUNDATION, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**No. 71 Civ. 1370.**

United States District Court,
S. D. New York.

July 30, 1973.

---

Proskauer, Rose, Goetz & Mendelsohn, New York City, for plaintiff; George G. Gallantz, New York City, of counsel.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., New York City, for defendant; Milton Sherman, Asst. U. S. Atty., of counsel.

ROBERT L. CARTER, District Judge.

## OPINION

### THE RELEVANT FACTS

Plaintiff initiated this action to recover $143,050.31, plus appropriate interest, which it claims to have erroneously paid as income tax. Jurisdiction of the court is founded upon 28 U. S.C. § 1346(a)(1). The parties cross moved for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, and in accordance with the provisions of Rule 9(g) of the General Rules of this court the parties filed a joint statement stipulating to all the relevant facts.

On June 26, 1957, Ernest Weir, a resident of Pennsylvania, died and by his will, duly admitted to probate in that state, established in Article "TENTH" a "Trust A", for the benefit of his wife, Mary Weir. The trust income was payable for life and Mrs. Weir was given a general testamentary power of appointment to dispose of the trust principal upon her death.[1] The power of appointment was unrestricted and decedent expressed in his will no wish as to how it should be exercised.

Mrs. Weir organized the plaintiff corporation, during her lifetime, as a charitable organization dedicated to the advancement of medical research and education. Plaintiff was given, and still enjoys, an exemption as a charitable corporation under §§ 170(c) and 2055 of the Internal Revenue Code of 1954, as amended ("I.R.C."), 26 U.S.C. §§ 170(c), 2055. The creation of the plaintiff corporation was totally unrelated to Ernest's will (except insofar as it may have provided Mrs. Weir the means to establish this organization) and Mrs. Weir's power of appointment thereunder.

Mary Weir died in August 1968, and her will was duly admitted to probate in New York, her state of residence at the time of death. By Articles "FOURTH" and "SIXTH"[2] of her will she exercised her power of appointment over Trust A created in her deceased husband's will by directing that the principal of Trust A be distributed to charity and preferably to the plaintiff corporation.

Trust A (by its Trustee, First National City Bank) filed its tax returns for the fiscal year ending September 30 in January 1969 and paid $135,415.95 taxes on $541,783.82 capital gains realized during that fiscal year. In February, 1969, the Bank as Trustee, filed a claim for refund in the amount of $135,415.95—the entire capital gains tax paid for fiscal 1968. In short, the trustee was claiming that the entire capital gains, which would, of course, now inure to the benefit of the charity, was permanently set aside during 1968 for charitable purposes and, therefore, pursuant to § 642(c) I.R.C., 26 U.S.C. § 642(c), was deductible from income in its entirety. By letter dated January 22, 1970, the Manhattan District Director of the Internal Revenue Service ("I. R.S.") notified the Bank that the refund claim "has been rejected as no mention of charitable contribution was made in the original governing instrument section 642(c) I.R.C."

In March, 1969, the trustees under Mary Weir's will, duly executed a document directing that all property subject

1. Article "TENTH" provided, *inter alia*:
"Upon the death of my wife, MARY HAYWARD WEIR. I direct that the principal of this trust from which she derives all the income during her life, together with any undistributed income therein, shall be distributed to such person or persons, including her estate, as she may, by her last will and testament, nominate and appoint to receive the same."

2. "FOURTH: The property subject to my testamentary power of appointment under the Will of ERNEST T. WEIR shall be distributed to charity as provided in Article SIXTH of this Will.
"SIXTH: All the property directed in this Will to be distributed to charity as provided in this Article shall be used for the advancement of medical training and treatment and of medical and allied scientific knowledge by providing (without limitation) scholarships in medical schools, funds for medical research, and donations to hospitals, universities and other institutions for the advancement of said purposes, in such manner as the Trustees hereunder, in their absolute discretion, shall determine. I authorize and recommend (but do not require) (a) that said Trustees cause an appropriate charitable corporation to be organized to receive said property and to carry out my said purposes, or (b) if I have during my lifetime caused a charitable corporation to be organized, that distribution be made to said corporation for said purposes. The provisions of this Article shall, in all respects, be carried out in a manner consistent with Section 170(c) and Section 2055 of the Internal Revenue Code of 1954 (or the comparable provisions in force from time to time)."

to her power of appointment be distributed to the plaintiff and the principal of Trust A was so transferred. Furthermore, in a state court proceeding [3] to settle the accounts rendered by the bank as trustee of Trust A, the court held that any monies received as a refund in this action shall be distributed to the plaintiff.[4] Thus, the Foundation has succeeded to the interests of First National City Bank (as trustee of Trust A) and is properly before this court pressing the claim for refund.[5]

Congress has provided that under certain conditions amounts paid or permanently set aside for charitable purposes by an estate or trust shall not be subject to the provisions of § 170 I.R.C., 26 U.S.C. § 170, which limits the total percentage of deductions permitted. Rather, *any* amount of gross income (including *all* of gross income) so paid or permanently set aside may be deducted in computing taxable income, § 642(c) I.R.C., 26 U.S.C. § 642(c).[6]

## THE ISSUE FOR DETERMINATION

The sole question to be decided is whether the distribution of the principal of Trust A to the plaintiff was made "pursuant to the terms of the governing instrument." The difficulty, of course, is that Trust A itself did not provide for the distribution of the principal to charity but rather, left the disposition of that property to the beneficiary's discretion by way of an unrestricted testamentary power of appointment over the principal. Mrs. Weir was the one who directed the property to charity.

It would be well to begin by noting briefly what is not in issue. First, there is no question but that plaintiff is a proper charitable recipient within the terms of § 642(c). Secondly, it is undisputed that the amount in question was "paid or permanently" set aside "during the taxable year for which the deduction is claimed." Finally, and most importantly it is conceded by all parties that it is *Ernest's* will which is

3. In the Matter of the Judicial Settlement of the Account Rendered by First National City Bank, as Trustee, Under the Last Will and Testament of Ernest T. Weir, Deceased, Index No. 19747–1969, Supreme Court of the State of New York, County of New York.

4. The court directed, *inter alia*, that it be "ORDERED AND ADJUDGED that if and when any moneys are received upon the pending claim for a tax refund with respect to the trust for Mary Hayward Weir such moneys be paid over and distributed to Ernest and Mary Hayward Weir Foundation . . . ." In the Matter of the Judicial Settlement, etc., supra, at n. 3, decided June 10, 1970.

5. In addition to the $135,415.95 tax originally paid by the trustee as capital gains, the plaintiff also seeks recovery of $7,634.36 paid by the plaintiff on March 1, 1971. This additional sum paid represents surtax due for the year ending September 30, 1968 ($6,772.25), plus interest from September 30, 1968 to March 1, 1972 ($862.11). Plaintiff's total claim therefore, amounts to $143,050.31.

6. Section 642(c) was recently amended by section 201(b) of the Tax Reform Act of 1969, Pub.L. 91–172, 83 Stat. 558. That

statute is specifically made applicable only to transfers after December 31, 1969, Section 201(g)(2) of the Tax Reform Act of 1969, 83 Stat. 564 and, therefore, it is undisputed that the court must apply § 642(c) as it existed prior to the Tax Reform Act. That statute, Section 642(c) of the Internal Revenue Code of 1954, ch. 736, 68 A Stat. 216, provides in pertinent part:

"Deduction for amounts paid or permanently set aside for a charitable purpose.—In the case of an estate or, trust there shall be allowed as a deduction in computing its taxable income (in lieu of the deductions allowed by section 170(a), relating to deduction for charitable, etc., contributions and gifts) any amount of the gross income, without limitation, *which pursuant to the terms of the governing instrument* is, during the taxable year, paid or permanently set aside for a purpose specified in section 170(c), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit . . . ." (Emphasis added.)

the governing instrument; it is that document which established the trust (Trust A) now seeking a deduction from gross income for charitable contributions. Thus, in order to allow such deductions it must be shown that property was paid or permanently set aside for charity pursuant to the will creating the trust in question.

## THE APPLICABILITY OF STATE LAW

### A. Basic Principles To Be Followed:

The plaintiff first contends that state law must govern the definition of the words "pursuant to". In this case plaintiff maintains that applicable state law[7] treats property distribution by way of power of appointment as passing directly from the original source to the ultimate recipient without vesting in the intervening or intermediate estate of the person exercising the power. Thus, in this case, the property would be deemed as passing directly from the husband's estate to the Weir Foundation without ever having vested in the wife.[8]

The defendant does not question plaintiff's reading of state law, but rather, argues that it is not applicable in this case because federal law, not state law developed under circumstances other than the interpretation of federal tax statutes, must govern.

Our federal system of taxation is essentially one of financial surcharge on *existing* fundamental legal relationships. Congress obviously did not intend to define a whole code of primary relationships upon which to levy its tax, but rather, sought to impose a generally uniform system of taxation upon an exist-

ing legal structure. See, *e. g.*, Note, *The Role of State Law in Federal Tax Determinations*, 72 Harv.L.R. 1350 (1959); 10 Mertens, Law of Federal Income Taxation § 61.01 et seq. (1970). Given the inherent diversity in our federal system it was inevitable that the appropriateness of applying state law to federal tax questions should become a major problem of statutory interpretation.

The Supreme Court has enunciated some basic principles to be applied in a case such as this. In Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199 (1932) the Court was called upon to interpret § 208(a)(1), Revenue Act of 1924, providing for lower tax rates on the gain from the "sale or exchange of capital assets." Harmel had leased oil and gas rights on his property for a set sum, plus royalties. The state (Texas) where the transaction occurred treated oil and gas leases as a *sale* of the oil and gas in place and, therefore, defendant argued that the gain resulting from the cash payment he received as consideration for the lease was really a gain from the sale of a capital asset. The issue, of course, was the interpretation of the term "sale" in the statute.

In deciding that state law was not applicable, the Court took into account two threshold considerations: first, that it was interpreting a federal statute duly enacted pursuant to Congress' "plenary power under the Constitution" and, therefore, "not subject to state control", *id.* at 110, 53 S.Ct. 74; second, that federal tax legislation, "in the absence of language evidencing a different purpose, is to be interpreted so as to give a uni-

---

7. The husband died in Pennsylvania and his will was probated there. The widow died and her will (including the power of appointment) was probated in New York. The issue in this case involves the consequence of exercising the power as it bears on the interpretation of Ernest Weir's will. This potentially knotty conflict of laws problem is avoided by plaintiff's assertion that the law of *both* New York and Pennsylvania are essentially the same on this point.

8. Plaintiff cites two cases in support of its analysis of state law: Commonwealth v. Davis' Estate, 345 Pa. 284, 26 A.2d 915 (1942) (concerning a provision in the Pennsylvania estate tax) and Bishop v. Bishop, 257 N.Y. 40, 177 N.E. 302 (1931) (applying the New York rule against perpetuities). In view of the disposition of this matter it is not necessary to determine whether these and subsequent cases actually establish state law as plaintiff claims it to be.

form application to a nation-wide scheme of taxation." *Ibid.* The Court then enunciated the following rule to be applied in cognate cases:

"State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law." *Ibid.*

In concluding that federal, not state, law must apply the Court looked to state law to determine the specific consequences of the legal transaction in issue, then applied those consequences to the standards established in the federal law to determine if and when they should be taxed. "[T]he act of Congress has its own criteria, irrespective of any particular characterization of the payments in the local law." *Ibid.* Thus, regardless of what state law called the transaction, the oil and gas transaction had all the attributes of a lease and not a sale and would be so treated for tax purposes.

Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119 (1938) once again required the Court to consider the applicability of state law in federal tax interpretation. Section 22(b)(3) of the Revenue Act of 1932 permitted an exemption for the "value of property acquired by bequest, devise or inheritance." Lyeth was an heir of his grandmother, receiving a small amount of a large estate. He challenged the will on the grounds of the lack of testamentary capacity and undue influence. After the local probate court found the issues substantial, the case was ordered ready for trial but the parties decided to settle and Lyeth received a far larger amount than specifically bequeathed under the will. Pursuant to Massachusetts law its inheritance tax was applied only to property passing by a will *as written* and not as altered by a compromise settlement of claims. The question in *Lyeth*, therefore, was whether the interpretation of "acquired by inheritance" in the federal tax law should be governed by federal or state law.

In deciding upon a federal interpretation the Court relied heavily on the *Bur-*

*net* analysis: "We are not concerned with the peculiarities and special incidences of state taxes or with the policies they reflect." *Id.* 305 U.S. at 193, 59 S. Ct. at 158. The state unquestionably determines who could bequeath, who could inherit, and the necessary prerequisites and procedures for effectuating that transaction. The plaintiff's *status* as heir was determined by state law. But once it was established that Lyeth was an heir, "the question whether what the heir has thus received has been 'acquired by inheritance' within the meaning of the federal statute necessarily is a federal question. It is not determined by local characterization." *Ibid.*

The Court repeated the earlier considerations enunciated in *Burnet* and added this additional gloss: that in framing the statute in words such as "inheritance", "devise" and "bequest", Congress "used comprehensive terms embracing all acquisitions in the devolution of a decedent's estate," *id.* at 194, 59 S.Ct. at 159, and did not intend them to assume all the myriad nuances of local law.

Rogers' Estate v. Helvering, 320 U.S. 410, 64 S.Ct. 172, 88 L.Ed. 134 (1943) is particularly relevant to the issues before us. Section 302 of the Revenue Act of 1926 provided that a decedent's gross estate, for tax purposes, shall *include* "the value at the time of his death of all property . . . (f) to the extent of any property passing under a general power of appointment exercised by the decedent (1) by will . . . ."

Rogers Sr. gave Rogers Jr. (the decedent) a general testamentary power of appointment over certain property which, if not exercised by the son, would go to the son's heirs. On the latter's death one-third of the property would have passed to each of his three heirs, if the power were not exercised. The son, however, *did* exercise the power, giving each heir 2% of the property outright, two-thirds of the remainder in trust to two of the heirs, and the remaining one-third outright to a son of the third heir.

In determining the gross estate, the I.R.S., pursuant to § 302, included the entire amount disposed of by appointment but the Board of Tax Appeals *reduced* the gross estate by excluding the value of property going to the heirs because they got less than they would have if the decedent had not exercised the power of appointment. (If the power had not been exercised the entire one-third share going to each heir would have been excluded.) The Court concluded that the entire amount should be included.

The Court held that the estate tax was a tax on the privilege of directing the disposition of property after death and the decisive question was the value of the property so disposed. This was true even if other values, perhaps worth more, would have ripened had the disposition not occurred.

In determining the correct interpretation of "general power of appointment", the Court said:

"Whether for purposes of local property law testamentary dominion over property is deemed a 'special' or a 'general' power of appointment, . . . *whether local tax legislation deems the appointed interest to derive from the will of the donor or that of the donee of the power,* . . . *whether for some purposes in matters of local property law title is sometimes traced to the donee of a power and for other purposes to the* donor . . . are matters of complete indifference to the federal fisc.

"Whether by a testamentary exercise of a general power of appointment property passed under § 302(f) is a question of federal law, once state law has made clear, as it has here, that the appointment had legal validity and brought into being new interests in property. . . . Were it not so, federal tax legislation would be the victim of conflicting state decisions on matters relating to local concerns and quite unrelated to the single uniform purpose of federal taxation . . . . In taxing 'property passing

under a general power of appointment exercised * * * by will', *Congress did not deal with recondite niceties of property law nor incorporate a crazy-quilt of local formalisms or historic survivals." Id.* at 413–414, 64 S.Ct. at 173–174 (Emphasis added and citations omitted.)

In each of the three cases quoted the Court decided to rely on federal law to interpret the federal tax laws. There have been, however, numerous instances of reference to state law—as the plaintiff points out. In general, the courts have analyzed the problems raised in accordance with the principles dictated by the Supreme Court's decisions in such cases as *Burnet* and *Lyeth*.

■ The most common reference to state law occurs with regard to trusts and estates. Thus, we have seen that local law determines the right to inherit property, *Lyeth, supra* (though even here, once that right is established federal law will be used to interpret the tax statute) and we look to state law to determine the attributes of a power of appointment, though federal law defines whether such a power is "general" or "special" regardless of the state terminology. Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940).

■ Section 2041 of the Revenue Act of 1954, 26 U.S.C. § 2041, re-enacted § 302 discussed above in *Rogers*. § 2041 added, however, that a power is *not* general when the decedent could invade the property only for his own "health, education, support or maintenance." In determining the *extent* of decedent's interest in the property the court must look to state law, but once the nature and extent of that interest is determined, federal law governs its taxability. See, *e. g.,* Miller v. United States, 387 F.2d 866 (3d Cir. 1968).

In Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634 (1934) a trustee had distributed to the income beneficiaries all of the income from the trust without deducting for depreciation of

the trust property. The federal tax statute imposed a tax on the income "which, pursuant to the instrument or order governing the distribution, is distributable to such beneficiary. . . . " § 219(d) of the Revenue Act of 1921. The I.R.S. taxed the beneficiaries on the entire distribution they received. The Court, however, concluded that the tax was intended to be levied on what was properly distribut*able* (not necessarily the same as what was distribut*ed*). On this issue state law was controlling and, in view of a state court decision involving the same specific subject matter in which it was held that the trustee improperly failed to withhold income equal to depreciation and ordering the beneficiaries to repay the excess amounts they received, the Court permitted a tax only on the amount which should have been distributed.

### B. *Application of These Principles to This Case:*

■ In the case before us, as has been established, it is first necessary to look at the words of the statute itself which in pertinent part follows:

"In the case of an estate or trust there shall be allowed as a deduction . . . any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, paid or permanently set aside for . . . [charity]." 26 U.S.C. § 642(c)

There is, of course, no specific reference to state law, but the question is whether such reference is demanded by necessary implication. There is no enlightening legislative history upon which to rely for firm guidance, and such history as exists is devoid of any "necessary implication" that state law was considered as an interpretational base. The case law reviewed *ante*, however, persuades me that reference to state law is inappropriate.

The Court refused to be bound by state law when considering "sale", *Bur-* *net*; "inheritance", *Lyeth*; "general power of appointment", *Rogers Estate,* but did rely on the state law to determine "heir", *Lyeth*; the specific attributes of a power, *Rogers Estate, Morgan*; the extent to which a trust can be invaded, *Miller*; proper amount "distributable" from a trust, *Freuler.*

■ The guiding yardstick I extract from these cases is that in respect of general words of common usage, words which Congress would necessarily use to express a broad principle rather than a specific transaction, federal law should control without reference to nuances of local color. On the other hand, recognizing that Congress did not intend the tax law to establish a superseding code of primary relationships, the use of words of art which by their nature require reference to specific definitional or applicative elaboration in order to take on meaning mandates reference to state law. See, Stephens and Freeland, The Role of Local Law and Local Adjudications in Federal Tax Controversies, 46 Minn.L.R. 223, 224–234 (1961). This distinction is, of course, not always sharply apparent. Thus, in *Burnet* the word "sale" could be seen either as a general word of common usage or a specific term of art. In the instant case, however, the demarcation is clearly defined. The words "pursuant to" are general words, commonly used and for which there is even some difficulty in conjuring up any specific technical meaning necessitating reference to state law. These words have no hint of the legalistic overtones found in "sale" or "inheritance". Furthermore, the need for uniform interpretation of the statute in this regard is substantial. Thus, I am constrained to conclude that federal and not state law determines the meaning of "pursuant to".

### DETERMINING FEDERAL LAW

In seeking a federal definition of "pursuant to" the plaintiff suggests that a gift to charity is made "pursuant to" a *governing instrument creating a trust* to be disposed of by power of appoint-

ment simply by the exercise of that power in favor of the charity. It is contended that there need be no expression of charitable intent in the governing document and that the power of appointment need *not* be restricted to charitable dispositions. If the power of appointment is exercised so as to dispose of property to charity then that disposition was made pursuant to the governing instrument.

Plaintiff places principal reliance upon Old Colony Trust Co. v. Commissioner of Internal Revenue, 301 U.S. 379, 57 S.Ct. 813, 81 L.Ed. 1169 (1937). In that case the trust deed in question stated that, after certain life annuities had been paid, "I *authorize* my said trustees to pay to charities as hereinafter described such sums as in their judgment may be paid without jeopardizing the annuities herein provided for . . ." and upon the death of the last annuity recipient "I *direct*" the remainder to be paid to charity. *Id.* at 380, 57 S.Ct. at 814 (emphasis added). The trustees made certain payments to charities but the I.R.S. did not allow any exemption [9] because the taxpayer failed to prove that the monies donated derived from income earned during that year.[10] The First Circuit, on appeal, 87 F.2d 131 (1st Cir. 1931), affirmed on the ground that the trust instrument did not *require* the trustee to distribute to charity, but only authorized him to do so:

"Unless the trust instrument, therefore, unqualifiedly requires a distribution of the income of any year to charitable institutions, a deduction of the amount of such distribution is not permissible in computing the income tax for that year." 87 F.2d at 134.

The Supreme Court reversed.

"We are asked to hold that the words 'pursuant to' mean directed or definitely enjoined. And this notwithstanding the admission that Congress intended to encourage charitable contributions by relieving them from taxation. [Cases cited.]

" 'Pursuant to' is defined as 'acting or done in consequence or in prosecution of anything); hence, agreeable; conformable; following; according.' " [Citing Webster's New International Dictionary, Unabridged (2d Ed.) 1935.]

"The words of the statute are plain and should be accorded their usual significance in the absence of some dominant reason to the contrary. We find nothing in the regulations or practice of the Treasury Department or in the general purpose of the statute which requires the narrow meaning advocated by [the government]." 301 U.S. at 383–384, 57 S.Ct. at 815–816.

Clearly, then, *Old Colony,* while containing favorable language for the plaintiff herein, is not dispositive of this case. It does adopt a broad interpretation of "pursuant to" but on its facts it involved a case where the trust expressed a charitable intent and the Court chose not to accept the somewhat dubious legalistic distinction between "authorize" and "direct".

Furthermore, although plaintiff states that "the trustees in *Old Colony* had discretion which could have been exercised so as to choose non-charitable entities as ultimate beneficiaries" (as Mary Weir had in the instant case), I am not confident of that analysis. A reading of the trust instrument quoted in *Old Colony* seems to indicate that while the trustees were authorized, but not directed to distribute to charities, they were *not* authorized to distribute other than to charities—if they didn't give to charities they may not have been able to give to anyone.

9. A deduction was sought under § 162 of the Revenue Act of 1928, ch. 852, 45 Stat. 838, which is a predecessor of the statute now under consideration. For the purposes of the issues in this case the two statutes are identical.

10. Ultimately the Court held that it was *not* necessary for the gift to charity to come from income receipts of the year claimed. *Old Colony, supra* 57 S.Ct. at 816.

Finally, in *Old Colony*, the settlor created a trust and expressed the intent that certain trust properties be distributed to charity. The only question was whether the words of intent were sufficiently mandatory to qualify for the deduction. That case is far different from the case at bar. Here the settlor expressed not the slightest hint of charitable intent. Furthermore, in this case there was an intermediate power of appointment between the settlor and charitable beneficiary, and the intermediary had unfettered discretion to distribute the trust property as she saw fit.

The plaintiff also seeks to rely on United States v. Field, 255 U.S. 257, 41 S.Ct. 256, 65 L.Ed. 617 (1921). In that case the decedent established a trust with one-third of the income payable to his wife. On her death she was given the general power to appoint the future beneficiaries of one-half of her share of the trust income. Mrs. Field died in 1917 leaving a will by which she exercised her power of appointment in favor of her child. The I.R.S. sought to include in *her* estate tax the value of the property which she controlled by the power of appointment, relying on Section 202 of the Revenue Act of 1916, ch. 463, 39 Stat. 777 [11] which made no specific mention of powers of appointment. The regulations interpreting that section

provided that "[p]roperty passing under a general power of appointment is to be included as a portion of the gross estate of a decedent appointor." U.S. Internal Revenue Regulations No. 37, relating to Estate Taxes, revised May, 1917, Art. XI, as cited in United States v. Field, *supra* at 261, 41 S.Ct. at 257.

The Supreme Court held that notwithstanding the regulations, "the Revenue Act of 1916 did not impose an estate tax upon property passing under a testamentary execution of a general power of appointment." *Id.* at 262, 41 S.Ct. at 257. Congress reacted almost immediately and in Section 402(e) of the Revenue Act of 1918, ch. 18, 40 Stat. (part 1), 1057, 1097, included a provision that the value of the gross estate shall include the value of all property:

"To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will. . . ."

This provision has consistently been repeated almost verbatim [12] and now appears in the Code as 26 U.S.C. § 2041. Thus, the *Field* rule is no longer a valid precedent.

The Government essentially relies on three cases to support a two-pronged argument. It is first argued that a transfer to charity cannot be made pursuant

---

11. Sec. 202. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated:

    (a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate.

    (b) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final

disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title;

    ·    ·    ·    ·    ·

12. § 402(e) of the Revenue Act of 1921, ch. 136, 42 Stat. (part 1) 227, 279. § 302(f) of the Revenue Act of 1924, ch. 234, 43 Stat. (part 1) 253, 305. § 302(f) of the Revenue Act of 1926, ch. 27, 44 Stat. (part 2) 9, 71. § 803(b) of the Revenue Act of 1932, ch. 209, 47 Stat. (part 1) 169, 279. § 811(f) of the Internal Revenue Code of 1939, ch. 2, 53 Stat. (part 1) 1, 122. § 2041 of the Internal Revenue Code of 1954, ch. 736, 68A Stat. 1, 385.

to a governing instrument unless that instrument at least expresses *some* charitable intent. In Marquis v. United States, 173 F.Supp. 616, 146 Ct.Cl. 243 (1959) the estate of Harriet Heath claimed that certain taxes should not have been paid because the income taxed had been permanently set aside for charity. The decedent left most of her estate to John, her husband. He died shortly thereafter and left his residuary estate, which included property received from his wife, to charity. The wife's estate then argued that because she devised to the husband, and he gave to charity, it was certain that the wife's money was going to charity, and, therefore, Mrs. Heath's estate ought to receive the deduction. The Court found that the estate could not take advantage of § 102 (predecessor to § 642).

> "As to the income here in question . . . Harriet's will expressed no intimation whatever in the direction of charity. She gave the property, outright, to her husband John. He could have spent it, given it *inter vivos* to any person he chose, or devised it to individuals or to noncharitable or charitable entities as he chose. Whatever he did with it was not 'pursuant to the terms of' Harriet's will. It was 'pursuant to' the fact that he was the absolute owner of the property and, as such, could do as he pleased with it." *Id.* at 618.

The Court distinguished *Old Colony* by noting the charitable intent expressed in the governing instrument. The government argues that the power of appointment here differs from the devise in *Marquis* only in that Mary Weir could not spend or otherwise dispose of the property *inter vivos*. She could, however, direct disposition upon her death to either charitable or non-charitable entities.

The government also argues that even if the governing instrument did express some charitable intent, no deduction is permitted under § 642(c) "when the property ultimately transferred to charity is subject to the control of an intermediate beneficiary who has the power to distribute it to noncharitable as well as charitable entities." Memorandum in Support of Defendant's Motion at 12.

The second case relied upon by the government is Trust of John Walker v. Commissioner, 30 T.C. 278 (1958). There, John Walker left a trust in 1937 for life to his wife. He also gave his son Henry a power of appointment as to ¼ of the remainder of the trust after the wife's death. Henry's power took effect only if he had no children and he was further directed to distribute the property either to his father's lineal descendants *or* to charity, as he chose. Henry exercised his power by creating a second trust with two-thirds of the income to charity. The trustee of the trust set up by *John* sought, under § 162, to deduct the income of that portion of the corpus which *Henry* had set aside for charity. The Court declined to allow this deduction, holding that the charitable distribution was made pursuant to Henry's will and not John's. John's estate argued that the two wills ought to be read together and that inasmuch as John gave Henry the power of appointment and Henry exercised that power in favor of charity, therefore, John should get the deduction.

> "We are unable to arrive at this conclusion because the record clearly indicates that, at John's death, Henry then had the power at any time during his life . . . to appoint his share of the corpus of John's estate entirely to the lineal descendants of John to the exclusion of any charity . . ."

The plaintiff objects to *Walker* because of its apparent ignorance of *Old Colony*—and in fact there is no mention of that case in *Walker*. Plaintiff further claims that *Walker* supports its position because the court held that *Henry's* trust could claim the deduction and plaintiff believes it stands in a comparable position. The logic of plaintiff's reasoning here escapes me since The Weir Foundation admits to being the successor to First National City Bank

which was Ernest Weir's, and *not* Mary Weir's trustee.

Finally, the government relies on Wiliams v. United States, 158 F.Supp. 227 (N.D.Cal.1957) aff'd 251 F.2d 847 (9th Cir. 1958) where the court refused to allow the estate of Preston Lykins to receive a deduction under § 162. Preston and his wife, Mary, executed joint wills in which each spouse gave the entire estate to the other unless the other had predeceased the testator, in which case the remainder went to charity. Preston died first followed shortly by Mary.

The Court held that upon Preston's death the entire estate went to Mary. As to Preston's estate "the commitment of the income to charitable purposes during the taxable year results from circumstances entirely extraneous to the decedent's [Preston's] will." The Court rejected the argument that merely because the "income will eventually go to charity is, in itself, sufficient to justify the statutory deduction." 158 F.Supp. at 228.

It seems to me that the relevant precedents support the defendant's position. *Old Colony* is significantly distinguishable on its facts. Furthermore, the position advocated by the plaintiff seems logically inconsistent with the words of the statute and the purposes attributed to it by the Supreme Court in *Old Colony*. Conceding that the statute was designed to encourage gifts to charity, such encouragement was not effectuated by *the governing instrument* in question here. To the contrary, Ernest Weir established his trust and chose, by giving complete power of appointment to his wife, to forgo the statutory encouragement to give to charity. Williams v. United States, *supra*.

 It is clear to me, and I so find, therefore, that the donation to charity in this case was *not* "pursuant to the terms of the governing instrument." The normal usage of the words "pursuant to" conveys more than "not in violation of". I do not mean to say that the governing instrument must *require*

the charitable contribution; indeed, that argument was disposed of by the Court in *Old Colony*. Rather, the instrument must be shown to possess some positive charitable intent or purpose of the settlor—not merely that the settlor did not exclude charity from all the possible beneficiaries of his bounty.

Moreover, I need not rest my decision alone on absence of expression of charitable motive. Here there is, as well, Mary Weir's unrestricted power to dispose of the property on her death. This alone may be sufficient to bar a deduction under § 642(c). However, when in combination with the absence of charitable intent, I must conclude that the plaintiff did not receive the property here in question pursuant to the terms of the trust established by Ernest Weir.

Plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted.

Settle order.