**Clyde BROWNSTONE, As Trustee of the Ethel Brownstone Marital Trust Under Article Seventh of Will of Lucien Brownstone, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**Docket No. 04–4061–CV.**

United States Court of Appeals, Second Circuit.

Argued: April 26, 2005.

Decided: Sept. 27, 2006.

Robert P. Wittes, Warshaw Burstein Cohen Schlesinger & Kuh LLP, New York, N.Y., for Plaintiff–Appellant.

Sarah E. Light, Assistant United States Attorney (David N. Kelley, United States Attorney for the Southern District of New York, Kathy S. Marks, Assistant United States Attorney, on the brief), New York, N.Y., for Defendant–Appellee.

Before NEWMAN, McLAUGHLIN, and HALL, Circuit Judges.

HALL, Circuit Judge.

The trustee of a testamentary trust appeals from a judgment of the United States District Court for the Southern District of New York (Rakoff, *J.*). The district court granted summary judgment to

Defendant United States on the trustee's challenge to a denial of a tax refund.

We affirm.

## I. Background

Lucien Brownstone was a successful man during his life, and in his will he created a trust for the benefit of his wife Ethel [1]. This trust (the "Trust"), created under Article Seventh of Lucien's will, received as its principal an amount equal to the maximum federal estate tax deduction then allowable. The terms of the Trust permitted the trustee to pay principal and interest for Ethel's benefit, even exhausting the trust principal. In the same provision, Lucien's will also gave Ethel the power to distribute upon her death the remaining principal of the Trust to whomever she appointed in her will (the "power of appointment"). Lucien's will further provided that if Ethel did not exercise the power of appointment, the money would go to the Lucien and Ethel Brownstone Foundation, Inc. (the "Brownstone Foundation").

The structure of Lucien's will was designed to minimize the estate tax burden, and the creation of the power of appointment was critical to that plan. The use of this device ensured the funds comprising the Trust principal qualified for the marital deduction from Lucien's estate, a deduction available, then as today, only if the will vested "power in the surviving spouse to appoint the entire interest." 26 U.S.C. § 2056(b)(5).

After Lucien died in 1971 and Ethel having survived him, the Trust came into existence on March 31, 1976. Twenty years later, in October 1996, Ethel died. In her will, she exercised the power of appointment conferred by Lucien's will, directing that the Trust principal be paid into her estate. Ethel further directed by her will that Citibank, the executor of the estate, should pay the debts and expenses of the estate and distribute forty-eight cash bequests to specified family and friends. Finally, Ethel directed that whatever residuum be divided among eight institutions. For the purposes of this appeal, the government treats those eight institutions as charities.

In April and October of 1997, the Trust made income tax payments for 1996 in the sum of $313,375.01. In December of 1997, as directed by Ethel's power of appointment, the Trust transferred $1 million to the executor of Ethel's estate. In October 1998, the Trust filed an amended income tax return for 1996, the year Ethel died. That amended return, among other things, treated the $1 million distribution as a contribution for charitable purposes and sought to receive a refund of the taxes the Trust had paid in 1996. Almost two years later, in August 2000, the Internal Revenue Service ("the IRS") replied, granting the Trust a $74,413 refund but disallowing the refund in the amount of $228,401. That same month, Clyde Brownstone, the trustee of the Trust (the "Trustee"), filed a formal written protest with the IRS. The Trustee argued that the Trust owed zero dollars in taxes for 1996 because the $1 million distribution prompted by Ethel's exercise of the power of appointment should be treated as a deductible charitable distribution under 26 U.S.C. 642(c)(1), which allows the deduction of any gross income that *"pursuant to the terms of the governing instrument* is ... paid for a purpose specified in section 170(c) [includ-

---

1. We refer to Mr. and Mrs. Brownstone as Lucien and Ethel, respectively, for the pur- pose of clarity.

ing charitable purposes].” 26 U.S.C. § 642(c)(1) (emphasis added).

In March, 2002, the IRS replied that it would not grant the refund because “[t]he trust did not qualify for a charitable deduction pursuant to section 642(c)(1) of the Internal Revenue Code.” Five months later, the Trust filed a federal action challenging, among other things, the denial of the deduction and seeking $233,295 .38 in overpaid taxes.

Both parties moved for summary judgment. After oral argument, the district court granted summary judgment to the government. In considering whether the $1 million distribution qualified for a charitable deduction under section 642(c)(1), the district court identified two dispositive questions: (1) what is the “governing instrument”?; and (2) was the distribution of the Trust principal “pursuant to” that governing instrument? On the first question, the court concluded that Lucien’s will by itself was the “governing instrument.” The trustee argued that Ethel’s power of appointment, combined with Lucien’s will, comprised the governing instrument. The district court rejected that position, instead adopting the government’s argument that because the statute speaks in the singular—“*the* governing instrument”— there can only be one, and that instrument is Lucien’s will.

On the second question, the district court held that the $1 million distribution was not made “pursuant to” Lucien’s will, relying on this Court’s decision in *Ernest and Mary Hayward Weir Foundation v. United States,* 508 F.2d 894 (2d Cir.1974) (per curiam), where we concluded that whether a distribution was “pursuant to the terms of the governing instrument” turns on the intent expressed in that instrument. Comparing the intent in Article Seventh with other, more straightforwardly eleemosynary, provisions of Lucien’s will, Judge Rakoff concluded that Lucien expressed no intent to give the remaining funds in the Trust to charity. He noted:

> I think it is a closer issue, to be frank, than the first issue. But looking at the will as a whole, it is really hard not to be struck by the fact that here you have a determination that Property X goes to charity, that Property Y goes to charity and that Property Z [the Trust principal] goes unfettered. As I have repeatedly said today, the intent analysis is one that I am obligated to apply.

Thus, the district court concluded that the Trust was not entitled to the charitable deduction, and it granted summary judgment to the government.

The Trustee appeals.

## II. Discussion

We review a grant of summary judgment de novo. *Morales v. Quintel Entm’t, Inc.,* 249 F.3d 115, 121 (2d Cir.2001). In doing so, we must determine whether there was a disputed issue of material fact and, if there was not, whether the district court correctly applied the law. *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 441 (2d Cir.1995).

■ The taxpayer bears the burden of showing that it is entitled to a claimed deduction. *American Valmar Int’l Ltd. v. Comm’r,* 229 F.3d 98, 104 (2d Cir.2000).

The law applicable to this dispute is discrete. The trust is entitled to the deduction if the gift was, “pursuant to the terms of the governing instrument[,] ... paid for a purpose specified in section 170(c).” 26 U.S.C. § 642(c)(1). Section 170(c) defines the term “charitable contribution” as, among other things, a contribution to or for the use of “[a] corporation, trust, or community chest, fund, or foundation organized and operated exclusively for religious, charitable, scientific, literary, or

educational purposes, or to foster national or international amateur sports competition ... or for the prevention of cruelty to children or animals." 26 U.S.C. § 170(c)(2).

■ Thus, to qualify for the deduction the Trustee must (1) identify the "governing instrument"; (2) show that the distribution was given pursuant to the terms of that instrument; and (3) demonstrate that the distribution was paid for a charitable purpose under 170(c). Here, the government assumes the third step of the inquiry is satisfied. We focus our analysis, therefore, on the first and second steps.

Two precedents guide our analysis. The first is *Old Colony Trust Co. v. Comm'r*, 301 U.S. 379, 57 S.Ct. 813, 81 L.Ed. 1169 (1937), in which the Supreme Court considered whether a trust was entitled to certain claimed deductions. The trustee was obligated to pay set benefits to certain beneficiaries, but the trust instrument also "authorize[d]" the trustee to pay money to charitable organizations while the beneficiaries were still alive, so long as trust income was at least twice the amount necessary to satisfy the beneficiaries' payments. *Id.* at 380–81, 57 S.Ct. 813. The trustee, with sufficient trust income, made a number of charitable donations and later claimed tax deductions for them. The government challenged the deductions, arguing they were not given "pursuant to the ... deed creating the trust" (the language of the statute that preceded the current statute). The First Circuit agreed with the government, holding that the deduction was available only when the trust deed "unqualifiedly requires a distribution of the income of any year to charitable institutions." *Old Colony Trust Co. v. Comm'r*, 87 F.2d 131, 134 (1st Cir.1936). "In order for payments to charitable institutions ... to be deductible, they must be

directed by the person creating the trust...." *Id.* at 133.

■ In reversing the decision, the Supreme Court relied on Congressional intent and the ordinary meaning of the statute's language. Congressional intent favored deductions: "Congress intended to encourage charitable contributions by relieving them from taxation." *Old Colony*, 301 U.S. at 383, 57 S.Ct. 813. The ordinary meaning of the statute, meanwhile, was permissive: " 'Pursuant to' is defined as 'acting or done in consequence or in prosecution (of anything); hence, agreeable; conformable; following; according.' " *Id.* Under *Old Colony*, therefore, the governing instrument need not definitively direct the charitable contribution claimed as a deduction so long as it expressed some charitable intent.

The second case that guides our analysis is *Ernest and Mary Hayward Weir Foundation v. United States*, 508 F.2d 894 (2d Cir.1974), aff'g 362 F.Supp. 928 (S.D.N.Y. 1973). In *Weir Foundation*, this Court considered whether a charitable corporation was entitled to an income tax deduction for its distribution of trust principal to a charity. In his will, Ernest Weir established a trust for the benefit of his wife, Mary Weir. Mrs. Weir also received a general testamentary power of appointment to dispose of the remaining trust principal upon her death. Mrs. Weir's power of appointment was unrestricted and Mr. Weir indicated no preference in his will as to how his wife should exercise her appointment powers. The relevant provision in Mr. Weir's will stated: "Upon the death of my wife ... I direct that the principal of this trust ... shall be distributed to such person or persons, including her estate, as she may, by her last will and testament, nominate and appoint to receive the same." *Ernest and Mary Hayward Weir Foundation v. United States*, 362

F.Supp. at 930, aff'd, 508 F.2d 894 (2d Cir.1974). Under the terms of her own will, Mrs. Weir directed that upon her death, the trust principal be distributed to charity. Mrs. Weir's charitable intentions were respected and the trust subsequently filed a claim for a tax refund under § 642(c)(1). The Internal Revenue Service rejected the refund claim because "no mention of charitable contribution was made in the original governing instrument." *Id.* In other words, because Mr. Weir granted his wife unfettered discretion to dispose of the trust principal as she wished—and did not expressly direct any of the monies to charity—the trust was not entitled to a § 642 deduction. The district court held that the donation to charity was not "pursuant to the terms of the governing instrument" and therefore barred the claimed deduction. *Id.* at 939. This Court "agree[d] with the conclusion of the district court that th[e] monies were not paid or permanently set aside for a charitable purpose 'pursuant to the terms of the governing instrument' as required by 642(c), since the will of Ernest Weir expressed no such intent." *Weir Foundation,* 508 F.2d at 895; *cf. Williams v. United States,* 158 F.Supp. 227 (N.D.Cal.1957) (holding a wife's estate did not qualify for a charitable deduction where predeceasing husband's will evinced no charitable intent, but wife's will opted to give those proceeds to charities), *aff'd,* 251 F.2d 847 (9th Cir. 1958).

In light of these precedents, we proceed with our inquiry. First, we identify the governing instrument. Appellant asserts that "governing instrument" means "controlling," "directing" or "exercising authority over." Upon Ethel's death, appellant argues, her power of appointment, alongside Lucien's will, came to control the charitable distribution. Therefore, they conclude, Ethel's power of appointment, combined with Lucien's will, is the governing instrument.

Further, appellant cites the language of the predecessor statute to § 642(c)(1). Before it was amended in 1954, the statute referred to the "will or deed creating the trust" rather than the "governing instrument." Appellant considers this change in the language from the predecessor statute to the current statute significant; "governing instrument" is more inclusive than "will or deed creating the trust." This legislative change, says appellant, supports what the plain language already suggests: "Governing" means controlling. Ethel's power of appointment, combined with Lucien's will, governs in the sense that they control the distribution. Therefore, those two instruments together must comprise the governing instrument.

The government opposes these arguments. The change in statutory language is meaningless, they assert, and legislative history suggests the statute and its predecessor are "comparable." *See* S.Rep. No. 83–1622 (1954), *reprinted in* 1954 U.S.C.C.A.N. 4621, 4982 ("This provision is comparable to section 162(a) [the predecessor statute] of the 1939 Code."); H.R.Rep. No. 83–1337 (1954) *reprinted in* 1954 U.S.C.C.A.N. 4017, 4332–33 (same). In addition, the government argues that two cases, *Weir Foundation* and *John Allan Love Charitable Foundation v. United States,* 710 F.2d 1316, 1319 (8th Cir.1983), have "interpreted" the term "governing instrument" to have the same meaning as "will or deed creating the trust." Because case law and legislative history equate "governing instrument" with "will or deed creating the trust," the government argues, we should regard Lucien's will, which alone created the trust, as the governing instrument.

We find neither set of arguments sufficiently persuasive to stand on its own. To begin with, the precedents on which the government relies turn out to be less compelling than advertised. For example, the

government claims *Weir Foundation* "interpreted" governing instrument to mean will or deed creating the trust. This is not so. In *Weir Foundation*, at the district court, the parties expressly conceded "it is [the husband's] will which is the governing instrument." 362 F.Supp. at 931–32. Similarly, in *John Allen Love* the parties "agreed that the 'governing instrument' in this case is the Trust instrument, as amended." 710 F.2d at 1318. Because these cases assume, rather than interpret, the meaning of "governing instrument," they shed little light on the matter.

Appellant's arguments are equally unavailing. Appellant asks us to consider Ethel's power of appointment and Lucien's will together as the governing instrument, but as the district court noted on the record, the statute refers to "governing instrument" in the singular. To combine Ethel's power of appointment with Lucien's will and deem the resultant agglomeration the "governing instrument" strains the statute's text. We agree with appellant that ordinarily "governing" can imply a broader subject-object relationship than does "creating." Nevertheless, we find that the implication is neutralized by the statute's legislative history, which deems the current statute and its predecessor "comparable." We also agree with the district court that "the legislative history doesn't suggest that there is any attempt to broaden the prior law . . . ."

■ In construing the statute, however, we do not go so far as to equate "governing instrument" with "will or deed creating the trust." Instead, we note "[i]t is a common principle of taxation that where doubt exists, courts should resolve deductions in favor of the government: 'Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed.'" *Holmes v. United States*, 85

F.3d 956, 961 n. 3 (2d Cir.1996) (quoting *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348 (1934)). Here, Congress has not made clear provision that an instrument subsequent to the creating instrument, such as Ethel's exercise of the power of appointment, in Article Third of her will, when combined with the "creating" deed or will, such as Lucien's will, could qualify as a "governing instrument." Under this rule of construction, because there is no such clear provision, Ethel's appointment, combined with Lucien's will, *cannot* qualify as a governing instrument under § 642(c)(1). Indeed, were the Tax Code to permit a trustee to agglomerate the separately manifested intents of diverse testamentary instruments so as to create a single, chimerical "governing instrument," it would greatly enhance the ability of trusts to obtain income tax deductions. For this, Congress has not made clear provision. We hold, therefore, that the governing instrument in this case is not a combination of two separate instruments. It is Lucien's will alone.

■ The second step in our inquiry leads us to determine whether Ethel's distribution was made "pursuant to" the governing instrument, Lucien's will. In *Old Colony*, the U.S. Supreme Court held: "'Pursuant to' is defined as 'acting or done in consequence or in prosecution (of anything); hence, agreeable; conformable; following; according.'" 301 U.S. at 383–84, 57 S.Ct. 813. This standard is permissive, but it "still conveys more than 'not in violation of.'" *Weir Foundation*, 362 F.Supp. at 939. Therefore, "the instrument must be shown to possess some positive charitable intent or purpose of the settlor—not merely that the settlor did not exclude charity from all the possible beneficiaries of his bounty." *Id.*

Ethel's will, in exercising the power of appointment, did not make the charitable

distribution "pursuant to" the terms of Lucien's will because Lucien's will does not express sufficient charitable intent with respect to the Trust principal. In Article Seventh of his will, Lucien established the Trust for the support and maintenance of his wife. Article Seventh also gave Ethel a power of appointment that allowed her to distribute the Trust principal in any manner she saw fit. Only if she did not validly exercise that power would the Trust principal pass to a charitable organization. By the terms of Lucien's will, Ethel *could have* distributed the Trust principal entirely to private individuals. Just as easily, she *could have* distributed the Trust principal entirely to charity. But the choice was Ethel's alone, and Lucien's will expressed no preference. Indeed, Lucien's will necessarily abandoned all charitable intent with respect to the Trust principal in creating the power of appointment; if it had not, the Trust could not have taken advantage of the marital deduction. *See* 26 U.S.C. § 2056(b)(5). Once Ethel received the power of appointment, Lucien's will could not bind her to any course of action, charitable or otherwise. We agree with the district court: "She was not compelled to give one penny to charity. The governing instrument did not govern her free exercise of her discretion in any way, shape or form." Thus, Ethel did not make her distribution "pursuant to" the terms of the governing instrument.

### III. Conclusion

For the foregoing reasons, we AFFIRM the decision of the district court.

---

\* Chief Judge Robert N. Chatigny, United States District Court for the District of Connecticut, is a member of the Judicial Council of the Second Circuit. As the subject of these complaints, however, he did not participate in these proceedings of the Judicial Council.