540 F.Supp. 238 (1982)
JOHN ALLAN LOVE CHARITABLE FOUNDATION, Plaintiff,
v.
UNITED STATES of America, Defendant.
No. 80-1557C(3).
United States District Court, E. D. Missouri, E. D.
April 9, 1982.
*239 Thomas E. Tooney, III, Clayton, Mo., for plaintiff.
James Crowe, Asst. U. S. Atty., St. Louis, Mo., G. Scott Nebergal, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM
FILIPPINE, District Judge.
This is an action for refund of income taxes paid by The John Allan Love Personal Trust for the years 1975, 1976, and 1977. The action has been submitted upon stipulated facts. The primary issue is whether or not certain payments made by the Trust to the John Allan Love Charitable Foundation, and to other charities, were made "pursuant to the terms of" the Trust instrument, so as to entitle the Trust to charitable deductions for those payments under I.R.C. § 642(c). The Court having considered the parties' stipulated facts and exhibits, as well as the parties' briefs and the applicable law, hereby enters the following findings of fact and conclusions of law, pursuant to Fed.R.Civ.P. 52.

*240 FINDINGS OF FACT[1]
This is a tax refund suit in which the plaintiff, John Allan Love Charitable Foundation, (hereinafter the Foundation), as a transferee of the assets of John Allan Love Trust No. 100267, seeks to recover $136,674.27 in federal income taxes plus interest according to law, plus costs.
The Foundation is a Missouri non-profit corporation formed under the provisions of Section 355.010 et seq., R.S.Mo. 1979 and it was incorporated on April 6, 1966. The Foundation is exempt from federal income taxation and is treated as a private foundation for federal income tax purposes.
John Allan Love (hereinafter Settlor) created an inter vivos revocable trust on November 17, 1959, entitled "The John Allan Love Personal Trust" (hereinafter the Trust or the Taxpayer Trust). The Taxpayer Trust was funded primarily with securities and according to its terms, the Settlor was to receive all of the Taxpayer Trust income during his lifetime. Section IV of the original trust instrument provided, upon the Settlor's death, for a distribution of the bulk of the principal of the trust to his wife and children, along with specified sums to be distributed to variously named churches and hospitals.
The Settlor subsequently amended the Taxpayer Trust eight different times before his death on March 29, 1974. The Seventh Amendment to the Taxpayer Trust, dated May 9, 1969, provided for the establishment of a separate trust for each of the Settlor's children living at his death with each such trust to be funded by a distribution of principal from the Taxpayer Trust in the amount of $50,000. The Settlor's children were to receive income from these trusts during their lifetimes with the principal to be distributed free of trust, upon each child's death, to the Foundation, a qualifying charitable foundation.
As to the remaining Taxpayer Trust assets, the seventh amendment to the Taxpayer Trust provided that:
[A]ll of the remaining assets of this Trust shall be paid over as soon after my death as reasonably possible to the trustee or trustees under any trust created by my Last Will and Testament, which is therein created exclusively for charitable purposes, and which provides that the ultimate beneficiary shall be THE JOHN ALLAN LOVE CHARITABLE FOUNDATION, a Missouri charitable corporation.
This provision was not altered by the eighth amendment to the Taxpayer Trust and therefore was operative at the time of the Settlor's death.
John Allan Love also created a separate inter vivos revocable trust (hereinafter MTC Trust), on June 26, 1963, with the Mercantile Trust Company National Association as Trustee.
The Settlor subsequently amended this MTC trust seven different times before his death on March 29, 1974. By the Sixth Amendment to this MTC Trust, the Settlor provided that the assets of this MTC Trust upon his death were to pass "to the Trustee or Trustees under any trust created by his Last Will and Testament, which is therein created exclusively for charitable purposes, and which provides that the ultimate beneficiary shall be the John Allan Love Charitable Foundation, a Missouri charitable corporation."
By the Seventh Amendment to this MTC Trust, the Settlor provided that the assets of this trust upon his death were to pass, free of trust, to the Foundation.
The Settlor died testate having executed a Will (hereinafter the Will) dated July 13, 1970, a first codicil dated December 3, 1970, and a second codicil dated February 7, 1972.
Under Article VI of the Will, the residue of Settlor's estate was to be held in trust by St. Louis County Bank with 25 percent of the annual net income to be paid to the Foundation and the balance of the net income to be accumulated until termination of the trust upon the earliest of 100 years after Settlor's death, 21 years after the *241 death of the last living descendant, or the value of the assets of the trust exceeding $50,000.00,[2] at which time the principal and all accumulated income would be distributed outright to the Foundation.
Settlor's second codicil, dated February 7, 1972, and operative at the time of his death, revised Article VI of the Will to provide that the residue of his estate would pass outright to the Foundation.
On October 21, 1974, the Settlor's five children and representatives for two children of a deceased child filed suit in the Circuit Court of the City of St. Louis challenging the validity of the Settlor's Will and the two codicils thereto. By means of an Amended Petition, the plaintiffs also sought to set aside the Taxpayer Trust and the eight amendments thereto and the MTC Trust and the seven amendments thereto.
On or about December 1, 1976, the Will contest suit was settled and the Foundation agreed to pay, or cause to be paid, a total of $800,000 to be divided among the plaintiffs. Of the $800,000 settlement amount, $520,000 was paid by the Foundation and $280,000 was paid by the Taxpayer Trust.
As a result of the Will contest suit, the trustee of the Taxpayer Trust did not fund the five separate trusts of $50,000 each for the settlor's five surviving children nor were annual distributions of income made to the children.[3]
As of the date of death of the Settlor, March 29, 1974, the value of the assets of the Taxpayer Trust was $2,070,381.07 with $55,000.00 of the value consisting of real estate, the value of the assets of the MTC Trust was $538,765.51, and the value of all assets of the Settlor was $2,629,401.08. The records of the trustee show income of and distributions made by the Taxpayer Trust after March 29, 1974, the date of death of the Settlor, as follows: Income of Taxpayer Trust

1974:
 Interest $33,305.00
 Dividends 29,816.00
 Rents and Royalties 4,110.00
 Foreign Income 1,407.00
 __________
 $68,638.00
1975:
 Interest $55,440.00
 Dividends 39,070.00
 Foreign Income 1,088.00
 __________
 $95,598.00
1976:
 Interest $68,169.00
 Dividends 43,481.00
 __________
 $111,650.00
1977:
 Interest $18,277.00
 Dividends 12,803.00
 Capital Gains 58,503.00
 __________
 $89,583.00

Distributions of Taxpayers Trust

10-10-74 Income transfer to principal $34,192.08
11-22-74 Income transfer to principal 15,000.00
11-29-74 Income transfer to principal 2,000.00
12-19-74 Income transfer to principal 15,000.00
4-3-75 Income transfer to principal 15,000.00
5-22-75 Income transfer to principal 10,000.00
6-12-75 Income transfer to principal 10,000.00
7-3-75 Income transfer to principal 11,000.00
9-18-75 Income transfer to principal 16,000.00
10-2-75 Income transfer to principal 4,000.00
10-9-75 Income transfer to principal 7,000.00
12-15-75 Income transfer to principal 15,000.00
12-15-75 Distribution of 1974 net income to John
 Allan Love Foundation from principal
 to substantiate deduction on Schedule B
 Form 1041 72,148.00
12-27-76 Charitable contributions from income
 made directly to charities instead of
 Foundation;
 University of Virginia 9,318.20
 John Burroughs School 9,318.20
 Children's Home Society of Missouri 9,318.20
 Washington University 9,318.20
 Central Institute for Deaf 9,318.20
 Mary Institute 9,318.20
 Life Skills Foundation for the Retarded 9,318.20
 St. Peter's Episcopal Church 9,318.20
 St. Luke's Hospital 9,318.20
2-27-77[4] Principal payment to Foundation 269,650.00
3-10-77 Principal advanced back by Foundation
 for Federal Estate Tax (81,000.00)

*242
3-21-77 Principal distribution of securities to
 Foundation having an approximate market
 value of $1,000,000.00.
11-10-77 Principal advanced by the Foundation
 for Missouri Inheritance Tax (12,000.00)
5-15-78 Income transfer to principal 1,850.47
5-15-78 Final principal payment to Foundation 4,885.12

The Taxpayer Trust filed Forms 1041, U. S. Fiduciary Income Tax Returns, for the years 1975, 1976 and 1977, respectively on April 15, 1976, April 15, 1977, and April 15, 1978. These returns were prepared by the corporate Trustee and an accounting firm was consulted in preparing these returns. On the returns filed for the years 1975, 1976, and 1977 the Taxpayer Trust claimed charitable contribution deductions of $88,691 for 1975, $102,456 for 1976, and $29,252 for 1977. On or about April 13, 1979, the Taxpayer Trust filed amended Forms 1041, U. S. Fiduciary Income Tax Returns for the years 1975 and 1976 on which amended returns the Taxpayer Trust attempted an election to treat the charitable contributions originally claimed for the years 1976 and 1977 as having been paid in the taxable years 1975 and 1976, respectively.[5] In other words, the 1975 amended return attempted an election to have $88,691 in contributions paid during 1976 treated as paid in 1975 and the 1976 amended return attempted an election to have $102,456 in contributions paid during 1977 treated as paid in 1976. These amended returns were filed before any defect in the original returns were pointed out by the Internal Revenue Service and before any deficiency was assessed.
Upon examination, the Internal Revenue Service determined that the Taxpayer Trust was not entitled to the charitable contribution deductions claimed on its tax returns for the years 1975, 1976 and 1977. Accordingly, a deficiency was assessed for each of the taxable years as follows:

 Year Amount
 1975 $ 47,564.00
 1976 57,069.00
 1977 6,473.00
 ___________
 TOTAL $111,106.00

The above amount, together with the assessed interest for 1975, 1976, and 1977 in the amounts of $13,038.07, $11,648.72, and $881.48, respectively, was timely assessed against the Foundation as transferee of the assets of the Trust on June 27, 1980. On July 11, 1980, the Foundation made full payment of all assessed taxes and interest in the amount of $136,674.27.
The Foundation timely filed claims for refund with the Kansas City Service Center on July 11, 1980, for each of the years 1975, 1976 and 1977. The claims for refund filed by the Foundation were disallowed by the Internal Revenue Service by letters dated November 24, 1980.
This suit was timely instituted on December 8, 1980.

CONCLUSIONS OF LAW
The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(a)(1).
The parties stipulated to three issues of law which remain to be determined. However, plaintiff conceded the last of these issues in its Trial Brief. The primary issue remaining, therefore, is simply whether the Taxpayer Trust is entitled to a deduction under I.R.C. § 642(c)(1) for its taxable years 1975, 1976, and 1977. If the Court determines that issue in the plaintiff's favor, there is the further issue whether the elections made by the Taxpayer Trust for the years 1975 and 1976 were effective (i.e., timely).
Internal Revenue Code § 642 provides in pertinent part as follows:
Section 642. Special rules for credits and deductions.
....
(c) Deduction for amounts paid or permanently set aside for a charitable purpose. 
(1) General rule.In the case of an estate or trust ... there shall be allowed *243 as a deduction in computing its taxable income ... any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, paid for a purpose specified in section 170(c) .... If a charitable contribution is paid after the close of such taxable year and on or before the last day of the year following the close of such taxable year, then the trustee or administrator may elect to treat such contribution as paid during such taxable year. The election shall be made at such time and in such manner as the Secretary prescribes by regulations.
Plaintiff's factual argument in support of the entitlement of the Trust to the charitable deductions claimed for the years 1975, 1976, and 1977 is as follows. The 1975 claimed deduction of $88,691.00 is justified by the donation of $93,182.00 in cash to various charities on December 27, 1976; the 1976 claimed deduction of $102,456.00 is justified by the distribution of over $1,000,000.00 in principal to the Foundation in 1977; and the 1977 claimed deduction of $29,252.00 also is justified by the 1977 distribution to the Foundation and by the fact that the Trust had capital gains of $58,503.00 in 1977.
The position of the Government with respect to the deduction issue may be simply stated. The Government argues that none of the payments for which deductions are claimed were made "pursuant to the terms of" the Trust instrument, as required by § 642(c), because the Trust instrument, as amended, provided that remaining assets were to be paid over to any trust created in the Settlor's Will, created therein exclusively for charitable purposes and the ultimate beneficiary of which was to be the Foundation, but that there was no such trust created by the Settlor's Will as it was amended by the second codicil. Therefore, the Government contends, the Trust disposition failed, and the Trust assets reverted to the Settlor's estate, whence they passed to the Foundation through the residuary clause in the Settlor's Will. In short, the Government contends that the payments at issue were made pursuant to the terms of the Will, and not pursuant to the terms of the Trust instrument. The Government also argues that the distributions made to the Foundation in 1977 were from principal, not from income, and hence that the 1976 and 1977 deductions do not qualify under § 642(c), which specifies that charitable deductions must be payments from "gross income."
The plaintiff has not offered any alternative to the Government's theory of the legal mechanism which effected the payments to the Foundation and to the other charities which are at issue. Plaintiff's rebuttal argument is simply that even if the trust disposition failed, and the assets passed to the Foundation under the Will's residuary clause, the payments at issue were nevertheless made "pursuant to" the terms of the Trust instrument under the definition given that phrase in Old Colony Trust Co. v. Commissioner, 301 U.S. 379, 57 S.Ct. 813, 81 L.Ed. 1169 (1937). Plaintiff's Reply Trial Brief at 2.
In Old Colony Trust, supra, the trust deed authorized the trustees, but did not require them, to make charitable contributions under certain circumstances. In 1931, the trust had income of $164,339.39 and the trustees gave $190,000.00 to charities. The trustees claimed charitable deductions totalling $164,339.39. The Supreme Court held that the deductions should have been allowed even though the trustees had not been enjoined by the trust deed to make the contributions. In so holding, the Court quoted the following dictionary definition of "pursuant to": "acting or done in consequence or in prosecution (of anything); hence, agreeable; conformable; following; according." 301 U.S. at 383, 57 S.Ct. at 815.
Plaintiff's argument is apparently that the payments to the Foundation and the other charities were agreeable or conformable to the expressed intent of the Trust instrument that the ultimate beneficiary of the Trust assets be the Foundation. (The amended 1975 return indicates that the payments to the ten charitable organizations in *244 December, 1976, were made "pursuant to instructions and orders from" the Foundation.)
This argument has superficial appeal. Certainly, the payments at issue were not contrary to the Settlor's intent, because the Foundation was their beneficiary, either directly or indirectly. If it were sufficient that the payments be agreeable or conformable to the Trust instrument, plaintiff's position would have merit. However, the first definition in the series of definitions quoted in Old Colony, supra, provides the accepted criterion in this context; the issue really is whether the trust instrument was the legal mechanism under which the payments were made. See Ernest & Mary Hayward Weir Foundation v. United States, 362 F.Supp. 928 (S.D.N.Y.1973), aff'd, 508 F.2d 894 (2d Cir. 1974) (per curiam) (trust established in husband's will, for the benefit of wife, was not entitled to charitable deduction for contributions made to charities in wife's will, where wife had an unrestricted testamentary power of appointment over the principal); First National Trust and Savings Bank v. United States, 45 A.F.T.R. 1033 (S.D.Cal.1953) (husband's estate was entitled to deduction for contribution of trust income, earned in year of wife's death, to charities, where husband's will had specified that trust income was to go to charities upon wife's death); Williams v. United States, 158 F.Supp. 227 (N.D.Cal.1957), aff'd, 251 F.2d 847 (9th Cir. 1958) (per curiam) (estate of husband not entitled to charitable deduction where the charitable contributions were made by the will of the wife, whom the husband had predeceased in the same year, and the husband had willed his entire estate to his wife in case he predeceased her); Marquis v. United States, 173 F.Supp. 616 (Ct.Claims 1959) (wife's estate not entitled to charitable deduction for donations made in husband's will, although husband willed to charity the property he received under the wife's will).
The parties have not stipulated to the underlying mechanism by which the payments at issue were made. As noted above, defendant argues that the payments at issue were actually made because of the residuary clause in the Will, and the plaintiff does not dispute that argument. It is clear that the Settlor's Will, as amended February 7, 1972, by the second codicil, effectively nullified the provision contained in the Seventh Amendment to the Taxpayer Trust, dated May 9, 1969, that the remaining assets of the Trust were to go to any charitable trust created by the Will. Under the circumstances, the Court finds that it would be legal fiction to say that the Trust assets passed to the Foundation pursuant to the terms of the Trust instrument. The fact that the MTC Trust itself was altered to provide that its assets were to pass, free of trust, to the Foundation upon the Settlor's death, does not alter the fact that this was not done with the Taxpayer Trust.
The plaintiff makes the argument that this Court should apply the doctrine of cy pres to the facts of this case and that under Missouri law, "a court would also apply the doctrine of cy pres and it would carry out the general charitable intent of Mr. Love by holding that the income and property passed through the [Trust] to the John Allan Love Charitable Foundation." Plaintiff's Trial Brief at 17. As the Government has pointed out, there are several false steps in plaintiff's argument. First, plaintiff has not shown that any Missouri court actually did apply the doctrine of cy pres to the Trust instrument; and as this Court is asked to determine the tax consequences of established facts, not to order that charitable payments be made, cy pres is unavailing in this Court. Secondly, it is unlikely that a Missouri court would have applied cy pres in this case, because the gift to charity was effective anyway under the residuary clause in the Settlor's Will.
Plaintiff cites Rev.Rul. 72-442, 1972-2 C.B. 527, which ruled that an estate would be entitled to a charitable deduction under I.R.C. § 2055 for the value of its residuary interest, where the relevant State law would preserve the residuary transfer in trust for a charitable purpose by the application *245 of cy pres. However, as the Government points out, § 2055 does not use the "pursuant to" language of § 642(c), which governs the instant case. Moreover, the plaintiff has not shown that cy pres was applied to the terms of the Trust by the State court.
Accordingly, the Court concludes that the Trust was not entitled to the charitable deductions claimed for the years 1975, 1976, and 1977, because the payments at issue were not made "pursuant to the terms of" the Trust instrument. This determination obviates the necessity of considering the remaining arguments and issues in this case. Judgment will be entered in the defendant's favor.
NOTES
[1] The findings of fact made herein are drawn from the parties' stipulations.
[2] Exhibit J, a copy of the Will, shows that this amount should read "$50,000,000.00."
[3] The parties have stipulated that Exhibit V is a copy of the settlement agreement and of the Order of the Circuit Court, dated March 15, 1977, finalizing the settlement. The Circuit Court's judgment upheld the validity of the Will and the two codicils thereto, in accordance with the settlement agreement.
[4] The stipulated date of 2-27-81 was obviously a typographical error.
[5] This is the parties' stipulation. Nonetheless, the Court observes that what was apparently meant was that the amended returns attempted elections to treat charitable contributions made in 1976 and 1977 as having been made in 1975 and 1976, respectively. In other words, the amended returns attempted to justify the deductions claimed on the original returns.