T.C. Summary Opinion 2016-67

UNITED STATES TAX COURT

HARVEY C. HUBBELL TRUST, HARRY J. FINKE, IV, TRUSTEE, Petitioner
v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2889-12S.                    Filed October 13, 2016.

Harry J. Finke IV (a trustee), for petitioner.

Nancy P. Klingshirn, for respondent.

SUMMARY OPINION

WHALEN, Judge: This case was heard pursuant to the provisions of
section 7463 of the Internal Revenue Code in effect when the petition was filed.
Pursuant to section 7463(b), the decision to be entered in this case is not
reviewable by any other court, and this opinion shall not be treated as precedent
for any other case. Respondent determined a deficiency of $32,639 in the Federal

income tax of the Harvey C. Hubbell Trust (trust or Hubbell Trust) for taxable year 2009. The sole issue for decision is whether the trust is entitled to a charitable contribution deduction of $64,279 in computing its income tax for taxable year 2009. Hereinafter, all section references are to the Internal Revenue Code, as amended and in effect for 2009, the taxable year in issue, unless stated otherwise.

## Background

This case was submitted without trial under Rule 122 of the Tax Court Rules of Practice and Procedure. Hereinafter, all Rule references are to the Tax Court Rules of Practice and Procedure. Pursuant to the agreement of the parties, the case was submitted on the basis of the pleadings, the facts recited in the stipulation of facts, and the exhibits attached thereto. Furthermore, each of the three trustees of the trust filed an unsworn declaration under penalty of perjury pursuant to 28 U.S.C. sec. 1746 (2012).

The trust is a testamentary trust created under the last will and testament of Harvey C. Hubbell executed on October 14, 1955 (hereinafter will). Following Mr. Hubbell's death, on October 1, 1957, the will was admitted to probate before the Court of Common Pleas, Hamilton County, Ohio, Probate Division (probate court). In 1960, after the final distribution of Mr. Hubbell's estate, the trust,

described in item IV of the will, came into existence. Item IV of the will provides as follows:

ITEM IV

All the rest, residue and remainder of my estate, I give, devise and bequeath to my Trustees hereinafter named, and to their successors in trust. The Trustees shall make payment out of net income if available, otherwise out of principal, as follows:

(a)     To each sister and brother of mine then living such amount as my executors and trustees deem best but not in excess of one hundred dollars ($100.00) per month for life;

(b)     To each blood niece and nephew of mine then living such amount as my executors and trustees deem best but not in excess of fifty dollars ($50.00) per month for life;

(c)     To Ed Wagner the sum of Five Hundred Dollars ($500.00);

(d)     To Isabell L. Kircher the sum of One Hundred Dollars ($100.00) per month for life; and

(e)     To Clarence Caesar the sum of Seventy-Five Dollars ($75.00) per month for life.

Item V of the will provides that the trust will terminate upon the death of the last person receiving benefits under the trust, unless the trustees decide to continue the trust under the terms set out in that provision. Item V provides as follows:

## ITEM V

The trust last above mentioned shall terminate upon the death of the last person receiving benefits therefrom, except that if in the judgment of the then Trustees it is advisable to continue the trust, it may be continued for not longer than ten (10) years after such death. All unused income and the remainder of the principal shall be used and distributed, in such proportion as the Trustees deem best, for such purpose or purposes, to be selected by them as the time of each distribution, as will make such uses and distributions exempt from Ohio inheritance and Federal estate taxes and for no other purpose.

In 2009 only two beneficiaries were entitled to receive payments under item IV of the will, Clarence E. Caesar and Frances Cleveland, one of Mr. Hubbell's nieces. During 2009 the trustees made monthly payments to them totaling $1,500 as directed by the will. Mr. Caesar died during the following year.

In addition to the trust, item II of the will contemplates the creation of a marital trust for the benefit of Mr. Hubbell's wife, Grace. Item II provides that, if she were to survive, then one-half of Mr. Hubbell's estate would be contributed to the marital trust and the trustees would pay the income therefrom to Grace for life. Item II also directs the trustees to pay the remainder of the marital trust as Grace might direct in her last will. Item II further provides that if she were to make no such direction in her last will, then the remaining assets of the marital trust would become part of the trust established under item IV of the will. Grace did not survive her husband, and the marital trust did not come into existence.

The will appoints three individuals, including Alton E. Purcell, Esquire, Mr. Hubbell's attorney, to be "Executors and Trustees". They are given broad powers to manage Mr. Hubbell's estate and the two trusts described above. They are also given the power to create a foundation or other similar organization "in order to comply with my wishes as to the disposition of the residue of my estate". Item VIII provides in part as follows:

ITEM VIII

\*  \*  \*  \*  \*  \*  \*

Without limiting the general powers of my executors and trustees, I authorize and empower them, in their sole discretion and without any order of court, to do any or all of the things set forth in the following paragraphs, which, and upon such prices, terms and conditions as, they deem advisable:

\*  \*  \*  \*  \*  \*  \*

9. Organize and incorporate, if they deem best in order to comply with my wishes as to the disposition of the residue of my estate, a foundation or other similar organization.

The trustees have never established a foundation or other similar organization pursuant to the above provision.

On March 16, 1960, the executors and trustees of the Estate of Harvey C. Hubbell, Deceased, filed an inventory of the personal property and real property belonging to the deceased Mr. Hubbell, including the value of the yearly rental of

the real property. The total value of Mr. Hubbell's property on that date, including the value of the yearly rental of the real property, was shown on the inventory as $2,001,833.41.

From that time until 2009, the year in issue, the trustees managed the assets of the trust, they paid fees and expenses, and from the net income of the trust they made the distributions required under item IV of the will. From time to time, the trustees also caused the trust to make charitable contributions as defined by section 170(c).

The information set forth in the following schedule was taken from a sampling of the Forms 1041, U.S. Income Tax Return for Estates and Trusts, that were filed on behalf of the trust from 1985 through 2008. In the following schedule, the second column lists the income received by the trust for each of the years shown; the third column lists the total individual payments that were made by the trust under item IV of the will for each of those years; and the fourth column lists the charitable contribution deductions claimed by the trust for each of those years:

| Year | Income | Distributions | Charitable contribution deduction |
|------|--------|---------------|-----------------------------------|
| 1985 | $700,304 | $2,700 | $384,976 |
| 1988 | 46,830 | 2,100 | 77,900 |
| 1991 | 187,610 | 2,100 | 159,441 |
| 1994 | 138,445 | 2,100 | 139,450 |
| 1997 | 175,008 | 2,100 | 146,933 |
| 2001 | 125,465 | 2,100 | 99,148 |
| 2005 | 159,306 | 1,500 | 125,274 |
| 2008 | 112,403 | 1,500 | 86,864 |

During 2009 the trust made charitable contributions, within the meaning of section 170(c), of cash totaling $26,700. During that year, the trust also made charitable contributions within the meaning of section 170(c) of shares of stock valued at $88,630.89. The trust's income tax return for 2009 claimed a charitable contribution deduction of $64,279. According to the trust's return, that amount was computed as follows:

| Description of Item | Amount |
|---|---|
| Total contributions in cash | $26,700.00 |
| Total contributions in stock | 88,630.89 |
| Total charitable contributions | 115,330.89 |
| Subtract: Amount set aside for religious, charitable or educational purposes for the year ended 12/31/08 | (53,942.48) |
| | 61,388.41 |
| Add: Amount set aside for religious, charitable or educational purposes for the year ended 12/31/09 | 3,620.59 |
| Amounts paid or permanently set aside for charitable purposes | 65,009.00 |
| Tax-exempt income allocable to charitable contributions | (730.00) |
| Charitable contribution deduction | 64,279.00 |

On December 27, 2013, the trustees filed with the probate court a Complaint for Declaratory Relief or, in the Alternative, Modification of Trust. The probate court entered an agreed judgment on April 2, 2014, wherein it cited item V and item VIII, paragraph 9, of the will, quoted above, and entered the following judgment:

The language of the Will, as written, providing for the administration of the Trust, authorizes, and has from the inception of the Trust authorized, the Trustees of the Trust to make distributions of income and principal for charitable purposes specified in Internal Revenue Code section 170(c), or the corresponding provision of any subsequent federal tax law, both currently and upon termination of the Trust.

## Discussion

### The Will

Mr. Hubbell's will contemplated the creation of two testamentary trusts. First, in item II of the will Mr. Hubbell directed that a marital trust be created for his wife, Grace, if she survived him. He directed that the marital trust be funded with one-half of his estate, after the payment of his debts, and that Grace receive all of the income from the marital trust for life with a testamentary power of appointment. If Grace failed to exercise her power of appointment upon her death, then Mr. Hubbell directed that the remainder of the marital trust would become part of the second trust.

The second trust contemplated by Mr. Hubbell's will is the trust established under item IV in which Mr. Hubbell directed that monthly payments be made for life to each of his sisters and brothers, blood nieces and nephews, and two named individuals, if they survived him. We sometimes refer to these payments as annuities and to the beneficiaries under item IV as annuitants. Mr. Hubbell also

directed the trustees to make such payments "out of net income if available, otherwise out of principal". The trust was to be funded with the residue of Mr. Hubbell's estate, after the payment of approximately one-half of his assets to the marital trust, if a marital trust were established, and the payment of all inheritance and estate taxes.

In item V of the will, Mr. Hubbell directed that the trust terminate upon the death of the last person receiving payments under item IV unless the trustees continue the trust for a period no longer than 10 years. During such a continuation period, Mr. Hubbell directed the trustees to use and distribute the trust assets in such a way as to make the "uses and distributions exempt from Ohio inheritance and Federal estate taxes and for no other purpose". In this opinion, we assume ad arguendo that this quoted phrase from item V authorizes the trustees to make charitable contributions, as defined by section 170(c).

As it turned out, Ms. Hubbell did not survive her husband and the marital trust contemplated under item II never came into existence; only the trust established under item IV came into existence. From 1960, when that trust began to operate, through 2009, the year in issue, a period of almost 50 years, there were living beneficiaries entitled to receive payments under item IV, and the trustees named in Mr. Hubbell's will, and their successors, made the payments required by

that provision. Thus, during the existence of the trust to that point, there was never a termination of the trust under item V. The trustees never had the option of invoking item V to continue the trust, and to use and distribute all unused income and the remainder of the principal, as would make "such uses and distributions exempt from Ohio inheritance and Federal estate taxes and for no other purpose".

Throughout the trust's existence through 2009, the trustees regularly used trust assets to make cash and noncash charitable contributions within the meaning of section 170(c), and they claimed deductions for such contributions on the trust's Federal income tax returns. The issue before us involves the charitable contribution deduction of $64,279 claimed by the trust for 2009.

The Amount Deducted for 2009

A schedule attached to the trust's 2009 return shows how the trust's charitable contribution deduction was computed. That computation starts with the cash contributions of $26,700 and the noncash contributions of $88,630.89 that were made during the year to various charitable organizations, a total of $115,330.89. From that total, there is subtracted $53,942.48, described as the "amount set aside for religious, charitable or education purposes for the year ended 12/31/08", and there is added $3,620.59, described as the "amount set aside for religious, charitable or education purposes for the year ended 12/31/09". The

sum of those amounts, $65,009 ($115,330.89, less $53,942.48, plus $3,620.59), was reported on Schedule A, Charitable Deduction, of the trust's 2009 return as the amount "paid or permanently set aside for charitable purposes from gross income". After allocating tax-exempt income of $730 to that amount, the trust claimed the difference, $64,279, as a charitable contribution deduction under section 642(c) (i.e., $65,009 minus $730).

Respondent's Position

Respondent disallowed the charitable contribution deduction of $64,279 claimed by the trust for taxable year 2009. This was the only adjustment made in the notice of deficiency issued to the trust for that year. Respondent concedes that the contributions during that year were paid for a purpose specified in section 170(c). Nevertheless, respondent asserts that the trust is not entitled to deduct the amount contributed because none of the contributions was made "pursuant to the terms of the governing instrument", as required by section 642(c)(1). According to respondent, no provision of the will authorized the trustees to make charitable contributions for taxable year 2009 or for any other year. Thus, respondent asserts that the charitable contributions made during 2009 are not deductible under section 642(c)(1).

As a general rule, the Commissioner's determination in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is in error. Rule 142(a). Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

The Position of the Trust

Even though the trust acknowledges that the issue in this case is whether its trustees were authorized by the will to make charitable gifts during 2009, it points to no provision in the will by which Mr. Hubbell expressly authorized the trustees to make such gifts. The trust asserts that the Court can go beyond the provisions of the will to determine Mr. Hubbell's intent because there is a latent ambiguity in the will. A latent ambiguity has been defined as follows:

> A latent ambiguity is a defect which does not appear on the face of language used or an instrument being considered. It arises when language is clear and intelligible and suggests but a single meaning, but some intrinsic fact or some extraneous evidence creates a necessity for interpretation or a choice between two or more possible meanings, as where the words apply equally well to two or more different subjects or things.

Conkle v. Conkle, 285 N.E.2d 883, 887-888 (1972); see Michelsen-Caldwell v. Croy, No. WD-08-001, 2008 WL 3878371 (Ohio Ct. App. Aug. 22, 2008); Cline

v. Lewton, No. 16466, 1994 WL 149259 (Ohio Ct. App. Apr. 27, 1994); cf. Woods v. Commissioner, 92 T.C. 776 (1989).

The trust argues that, "[t]o the extent the language of the Hubbell Will is not clear in explicitly authorizing charitable gifts, it contains a latent ambiguity". The trust argues that the latent ambiguity is revealed by the fact that the trustees of the trust (including Alton E. Purcell, who was Mr. Hubbell's attorney and "presumably" knew his intent, and who probably drafted the will) "have consistently exercised their duties with the understanding that the Will authorized them to make charitable gifts". As a result, the trust argues, the Court can use extrinsic evidence to resolve the latent ambiguity in the will and to find that Mr. Hubbell intended his trustees to make the charitable contributions that were made during taxable year 2009.

According to the trust, there is ample evidence that Mr. Hubbell intended to authorize its trustees to use trust assets to make charitable contributions. This evidence includes the provisions of the will, specifically item V, which authorizes the trustees to continue the trust for 10 years after it would otherwise terminate, as long as "all unused income and the remainder of the principal" shall be used and distributed for such purpose or purposes "as will make such uses and distributions exempt from Ohio inheritance and Federal estate taxes and for no other purpose".

The trust also points to item VIII, paragraph 9, of the will, which authorizes the trustees to organize and incorporate a foundation or other similar organization to carry out Mr. Hubbell's wishes "as to the disposition of the residue of my estate".

The evidence also includes the role of Alton E. Purcell, Mr. Hubbell's attorney, who probably drafted the will, and who, along with the other original and successor trustees for over 50 years, "never had reason to question that" Mr. Hubbell intended the trust to make charitable contributions. The evidence also includes the fact that the assets of the trust far exceeded the amount necessary to make the small individual payments required by item IV and suggests that Mr. Hubbell intended the excess to be used for charitable purposes.

Finally, the trust asserts that the agreed judgment entry of the probate court is consistent with the above evidence of Mr. Hubbell's intent because, as mentioned above, the judgment found that "the language of the Will authorizes, and has from the inception of the Trust, authorized the Trustees to make distributions of income and principal for charitable purposes specified in Internal Revenue Code section 170(c) * * * both currently and upon termination of the Trust". The trust cites Commissioner v. Estate of Bosch, 387 U.S. 456 (1967), and argues that "[w]hile the Probate Court's judgment is not binding on this Court", the Court should give proper regard to the judgment in deciding the issue before it.

Analysis

We must decide whether the trust is entitled to the charitable contribution deduction of $64,279 it claimed under section 642(c)(1) for taxable year 2009. The trust, which bears the burden of proof as to this issue, must do three things: (1) identify the "governing instrument"; (2) show that the charitable contributions were paid "pursuant to" the terms of that instrument as required by section 642(c)(1); and (3) demonstrate that each contribution was paid for a charitable purpose under section 170(c). See Brownstone v. United States, 465 F.3d 525, 529 (2d Cir. 2006). The parties agree that the will is the "governing instrument". They also agree that each of the subject contributions was paid for a charitable purpose under section 170(c). Thus, the trust need only show that the charitable contributions were made "pursuant to" the terms of the will, as required by section 642(c)(1).

In Old Colony Tr. Co. v. Commissioner, 301 U.S. 379 (1937), the Supreme Court considered the meaning of the words "pursuant to" in the context of a trust, like the Hubbell Trust, that was established to pay annuities to certain individuals from the gross income of the trust. The issue in that case was whether the charitable contributions made by the trust during the year 1931 had been paid "pursuant to" the governing trust deed, such that the trust was entitled to deduct

the contributions under a predecessor of section 642(c). Unlike Mr. Hubbell's will, the trust deed in that case expressly authorized the trustees to pay to charities "such sums as in their judgment may be paid without jeopardizing the annuities herein provided for" whenever the net income for the year equaled twice the amount of the annuities to be paid. Id. at 380.

The Commissioner argued that the charitable contributions were not made "pursuant to" the trust deed and were not deductible because the trust deed left the decision to the discretion of the fiduciary, and it did not direct the fiduciary to make the charitable contributions. Id. at 382-383. The Supreme Court rejected the Commissioner's argument, on the ground that the plain meaning of the words "pursuant to" is "acting or done in consequence or in prosecution (of anything); hence, agreeable; conformable; following; or according." Id. at 383 (quoting Webster's New International Dictionary, Unabridged (2d ed. 1935)). The Court rejected the Commissioner's position that the words should be interpreted to mean "directed or definitely enjoined." Id. at 383-384. The Court held that the trust was entitled to a charitable contribution deduction because the fiduciary was authorized, even though the fiduciary was not required by the trust instrument, to make charitable contributions, and the fiduciary did, in fact, make charitable

contributions.  See John Allan Love Charitable Found. v. United States, 710 F.2d 1316, 1320 (8th Cir. 1983).

It is important to note that under the Old Colony case a trust is not entitled to a charitable contribution deduction when the fiduciary, acting without any authority under the trust instrument, distributes trust assets to charity.  Id. at 1319-1320.  The trust instrument must authorize the fiduciary to make charitable contributions, in order for a court to find that the charitable contributions were made "pursuant to" the terms of the trust instrument.  Id.

It is helpful to compare the Hubbell case to Old Colony Tr. Co. v. Commissioner, 301 U.S. 379.  Both cases involve trusts created for the purpose of paying annuities to certain specified individuals for life.  The trust deed in Old Colony directed the trustees to make the specified annuity payments.  Id. at 380.  In addition, the trust deed expressly authorized the trustees to pay to charities, before the death of the last annuitant, "such sums as in their judgment may be paid without jeopardizing the annuities".  Id.  After the death of the last annuitant, the trust deed directed, the trustees were to distribute the remaining trust assets to charity.  Id. at 380-381.  Thus, the trust deed in the Old Colony case authorized the fiduciary to make charitable contributions before the death of the last annuitant,

and it directed the trustees to distribute the remainder of the assets to charity after the death of the last annuitant.

Mr. Hubbell's will, on the other hand, makes no provision for the payment of any charitable contributions before the death of the last annuitant. During that period, the only payments from net income expressly permitted to be made by the trust are the annual annuity payments specified by Mr. Hubbell in item IV. It is not until after the death of the last annuitant, when the trust terminates pursuant to item V, that the trustees are permitted to continue the trust, and to use and distribute unused income and the remainder of the principal for a purpose "exempt from Ohio inheritance and Federal estate taxes and for no other purpose". Thus, items IV and V conserve the assets of the trust by authorizing only the annual annuity payments required by item IV until after the annuities have been paid in full.

This conservative approach is consistent with the fact that Mr. Hubbell's will provides not only for the creation of the trust, but also for the creation of a marital trust for his wife, and directs in item II that the marital trust be given one-half of his property after the payment of his debts. If the marital trust had come into existence, then the trust would have received less than one-half of the amount it actually received. Representatives of the trust fail to take the marital trust into

consideration in their argument. We also note that item IV provides that the trustees shall make the annual annuity payments "out of net income if available, otherwise out of principal" and thereby suggests a concern about whether the assets of the trust would be sufficient to generate enough net income to pay the annual annuities.

Furthermore, the opinion of the Supreme Court in Old Colony provided clear authority to Mr. Hubbell and the drafters of his will to authorize, without directing, his trustees to make charitable contributions before the death of the last annuitant. See Old Colony Tr. Co. v. Commissioner, 301 U.S. 379. The opinion also shows that Mr. Hubbell could restrict such authority to prevent the charitable contributions from jeopardizing the payment of the annuities, as was done in the Old Colony case. Id. at 380. If Mr. Hubbell had intended to give his trustees such authority in his will, he could easily have done so. It is difficult to conclude that his failure to grant authority to his trustees to make charitable contributions before the death of the last annuitant was not intentional.

In the construction of a will, the testator's intention must be ascertained from the words of the will. E.g., Oliver v. Bank One, Dayton, N.A., 573 N.E.2d 55, 58 (Ohio 1991); Boulger v. Evans, 377 N.E.2d 753, 757 (Ohio 1978); Townsend's Ex'rs v. Townsend, 25 Ohio St. 477 (Ohio 1874). As discussed

above, items IV and V of the will show that Mr. Hubbell intended to provide lifetime annuities to his sisters and brothers, nieces and nephews, and named individuals, and he intended those annuities to be fully paid before the assets of the trust were used for any other purpose, such as making charitable gifts.

Contrary to the clear language expressing Mr. Hubbell's intent that no charitable contributions be made until after the death of the last beneficiary, the trust claims that Mr. Hubbell really intended to authorize the trustees to make charitable gifts before the death of the last beneficiary. The trust argues that Mr. Hubbell's true intent cannot be determined from the four corners of his will because there is a latent ambiguity in the will that cannot be resolved without considering extrinsic evidence involving the historic operation of the trust.

For there to be an "ambiguity" in a will, the words of the will must have two or more meanings, they must be understood in more than one way, or they must refer to two or more things at the same time. Boulger, 377 N.E.2d at 757. For the ambiguity to be a latent ambiguity, the language must be clear and intelligible and suggest but a single meaning, but some intrinsic fact or some extraneous evidence must create a necessity for interpretation or a choice between two or more possible meanings, as where the words apply equally well to two or more different subjects

or things.  Michelsen-Caldwell, 2008 WL 3878371, at *3; Cline, 1994 WL 149259, at *2; Conkle, 285 N.E.2d at 888.

The trust argues that the ambiguity in the will is found in the fact that "the language of the Hubbell Will is not clear in explicitly authorizing charitable gifts". Thus, the trust argues that items IV and V, which state in effect that charitable gifts cannot be made before the death of the last annuitant, are ambiguous because they do not explicitly state the opposite, that charitable gifts can be made before the death of the last annuitant.  This is not an ambiguity in the will.  It does not involve an interpretation or a choice between the different meanings of words of the will that have two or more meanings, or words that can be understood in more than one way, or words that refer to two or more things at the same time.  See Boulger, 377 N.E.2d at 757.  The trust is not asking the Court to resolve a latent ambiguity.  The trust is asking the Court to rewrite the will.

Since there is no ambiguity, there is no need to turn to extrinsic evidence, and the testator's intent must be determined from the will.  Id.  We find that the will provides in items IV and V that the annuity payments are the only payments that can be made from net income before the death of the last annuitant, whereas after the death of the last annuitant, if the trust is continued, the unused income and the remainder of principal can be used and distributed for a purpose "exempt

from Ohio inheritance and Federal estate taxes and for no other purpose". We further find that the will provides, in effect, that no charitable contributions are to be made until after the death of the last beneficiary. Therefore, the charitable contributions made by the trust during 2009 were not made pursuant to the will, the governing instrument, and they are not deductible under section 642(c).

Any other contentions made by the trust that we have not addressed are irrelevant, moot, or meritless.

Decision will be entered

for respondent.